**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**SHARON REED,**

                 **Plaintiff,**           10 Civ. 1053(JGK)

      - against -                **MEMORANDUM OPINION AND**
                                                                 **ORDER**
**DELTA AIRLINES, INC., ET AL.,**

                **Defendants.**
------------------------------------

**JOHN G. KOELTL, District Judge:**

     The defendants, Delta Airlines, Inc. ("Delta") and Delta ticket agent DelaCruz, bring this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff, Sharon Reed, alleges that the defendants are liable for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence and gross negligence, negligent misrepresentation, fraudulent misrepresentation, intentional tort, and implied contract. The defendants request that the Court grant summary judgment to the defendants as to all of the plaintiff's claims, except that the plaintiff should receive judgment for $650 plus any interest allowable by law for the unreimbursed portion of baggage fees charged to the plaintiff. In response to the defendants' motion for summary judgment, the plaintiff argues that judgment should be entered in her favor in the amount of $1,275,000. The plaintiff also moves for an order pursuant to Federal Rule of Civil Procedure 37 imposing

sanctions on the defendants and requiring them to release certain information.[1]

I.

The standards applicable to a summary judgment motion are well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether that burden has been met, the Court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "It is not the province of the court itself to decide what inferences should be drawn . . .; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving

---

[1] The caption in the case includes "Blondie," the plaintiff's dog as an additional plaintiff. However, at an early conference the plaintiff agreed that Blondie should be dismissed as a plaintiff and the caption therefore should correctly reflect only the plaintiff, Sharon Reed. See Sharon Reed v. Delta Airlines, Inc., et al., March 30, 2010 (Docket No. 7).

party, summary judgment is improper . . . ."  Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."  Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).  The district court may not grant an unopposed motion for summary judgment "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001).  "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  Vermont Teddy Bear, 373 F.3d at 244; see also Bank of Am., N.A. v. Vergest Ltd., No. 10 Civ. 4682, 2011 WL 92751, at *1 (S.D.N.Y. Jan. 11, 2011).

Where as here, a pro se litigant is involved, although the same standards for dismissal apply, the Court must give a pro se litigant special latitude in responding to summary judgment motion.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff

3

liberally and interpret them 'to raise the strongest possible arguments that they suggest' ") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); Vitrano v. State Farm Ins. Co., No. 08 Civ. 00103, 2008 WL 2696156, at *1 (S.D.N.Y. Oct. 18, 2008). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1998); see also Jenkins v. N.Y. State Banking Dept., Nos. 07 Civ. 6322 and 07 Civ. 11317, 2010 WL 2382417, *2 (S.D.N.Y. June 14, 2010.

In this case, after the plaintiff had initially filed a brief response to the motion for summary judgment, the Court issued an Order advising the plaintiff consistent with this District's Local Civil Rule 56.2 of the requirements for responding to a motion for summary judgment. The Court also provided the plaintiff with copies of Rule 56 and Local Rules 56.1 and 56.2. Rather than submitting a more detailed response to the motion, the plaintiff filed a motion seeking certain documents. The time for seeking discovery, however, had past. Moreover, the plaintiff failed to explain how the documents would affect the disposition of the motion for summary judgment. Despite the lack of a detailed response by the plaintiff, the

Court scrutinized the defendants' submissions and the basis for them.

II.

The following facts are undisputed in the record.

On October 24, 2009, the plaintiff arrived at John F. Kennedy International Airport ("JFK Airport") with four bags, a laptop, and a pet carrier with her puppy, "Blondie," intending to board a Delta flight to Ghana. (Affirmation of Louis R. Martinez ("Martinez Affirmation") Ex. A at 81:8-10, 85:11-14.) The plaintiff was issued her boarding pass after she paid one-thousand-dollars in cash to check the four bags, and one-hundred-dollars for Blondie's pet carrier. (Id. at 94:19-24, 102:5-8.) Through consulting a widely used computer database known as "Timatic," a Delta ticket agent discovered that the plaintiff was missing documents that Ghana required in order for her puppy Blondie to enter the country. (Def.'s 56.1 Statement ¶¶ 4-5; Martinez Affirmation Exs. B at ¶¶ 3-7, C at ¶¶ 4-5.) Upon learning she did not have the necessary documents for Blondie to enter Ghana, the plaintiff sent Blondie to her son's home instead. (Martinez Affirmation Ex. A at 99:13-18.) In response to the plaintiff's request, ticket agent DelaCruz issued the plaintiff a refund for the pet carrier fee and one of her four bags, totaling four-hundred-fifty-dollars. (Id. at 102:10-18.)

The plaintiff was unable to produce her passport at the gate because it was inadvertently sent away in Blondie's carrier bag.  As a result, a Delta gate agent denied the plaintiff entry to her flight.  (Id. at 105:16-19, 110:13-14.)  Delta issued the plaintiff a ticket on a subsequent flight to Ghana, and retrieved one of the bags that had been checked.  (Id. at 110:15-18, 122:3-18.)  The plaintiff's two remaining bags were sent to Ghana on her original flight.  (Id. at 121:3-18.)  The plaintiff returned to the ticket counter to receive a refund for her baggage fees.  However, because ticket agent DelaCruz was not there and the plaintiff had paid the baggage fees in cash, Delta was unable to refund the fees paid at that time. (Id. at 113:3-8, 116:2-15.)

The contract between Delta and the plaintiff, Delta's Contract of Carriage, consisted of the plaintiff's ticket, any applicable tariffs, and Delta's International Conditions of Carriage.  (Martinez Affirmation Ex. F at ¶ 4.)  The plaintiff was made aware of the applicable passenger tariffs and conditions of carriage upon arriving at the Delta check-in counters.  (Martinez Affirmation Ex. G at ¶¶ 5-6.)  In addition, Delta's International Conditions of Carriage were available for inspection at JFK Airport and were on file with the Department of Transportation.  (Martinez Affirmation Exs. F at ¶ 6, G. at ¶ 7.)

6

III.

The plaintiff claims that Delta breached its contract with her when it prevented her from boarding her flight to Ghana. However, because Delta acted within its rights under its contract with the plaintiff, this claim is precluded and is therefore dismissed.

Delta's International Conditions of Carriage were incorporated by reference in Delta's contract of carriage with the plaintiff, and are therefore enforceable as part of the contract. (Martinez Affirmation Ex. F at ¶ 4, Ex. 1.) In compliance with the requirements for incorporating terms into contracts of carriage under the Code of Federal Regulations, Delta made its International Conditions of Carriage available for public inspection at JFK Airport, and provided a "ticket notice" at check-in counters to advise passengers of the existence of incorporated conditions of carriage and to notify passengers that they could request full copies of the conditions from Delta. 14 C.F.R. §§ 253.4, 253.5; Martinez Affirmation Ex. G at ¶¶ 5-7.

In relevant part, Delta's International Conditions of Carriage provide that Delta may refuse to transport any passenger who does not possess the requisite travel documents, or in order to comply with government law. (Martinez

7

Affirmation Ex. F at Ex. 1, Rule 25.)  Furthermore, Delta is not liable for any information given to passengers regarding necessary travel documents or the status of government regulations, nor is it liable for refusing to transport a passenger based on a good faith determination of relevant laws. (Id. at Ex. 1, Rule 45.)  Passengers are responsible for possessing necessary travel documents, and complying with all government laws including those concerning the transportation of pets.  (Id. at Ex. 1, Rules 45, 55, 116.)

In this case, Delta delayed the plaintiff because she lacked the requisite documents to transport her puppy, and subsequently prevented the plaintiff herself from boarding her flight because she did not have her passport. Even if Delta was mistaken about the required documents for transporting a dog to Ghana, it made a good faith determination about the documents based on information provided by the International Air Transport Association ("IATA").  (Martinez Affirmation Exs. B at ¶¶ 3-11, C at ¶¶ 4-8.)  Delta's actions were consistent with the International Conditions of Carriage.  Because Delta did not breach its contract with the plaintiff, the plaintiff's breach of contract claim must be dismissed.  See, e.g., Seisay v. Campagnie Nationale Air France, No. 95 Civ. 7660, 1997 WL 431084, at *2-4 (S.D.N.Y. July 30, 1997); Clemente v. Philippine

8

Airlines, 614 F. Supp. 1196, 1199-1200 (S.D.N.Y. 1985); Anderson v. USAIR, Inc., 619 F. Supp. 1191, 1197 (D.D.C. 1985).

The plaintiff also claims that the defendants are liable for breaching an implied contract. However, a contract cannot be implied "where there is an express contract covering the same subject matter . . . ." BroadVision Inc. v. Gen. Elec Co., No. 08 Civ. 1478, 2009 WL 2603145, at *3 (S.D.N.Y. Aug. 13, 2009) (quoting Julien J. Studley, Inc. v. N.Y. News, Inc., 512 N.E.2d 300, 301 (N.Y. 1987)); see also Germano v. Cornell Univ., No. 03 Civ. 9766, 2005 WL 2030355, at *7 (S.D.N.Y. Aug. 17, 2005); Missigman v. USI Ne., Inc., 131 F. Supp. 2d, 495, 512 (S.D.N.Y. 2001). Accordingly, this claim must also be dismissed.

IV.

A.

The plaintiff's remaining tort claims are based on Delta's refusal to allow the plaintiff or her puppy to board the flight to Ghana. These claims are preempted by the Airline Deregulation Act ("ADA"), and must be dismissed.

The ADA prevents a state from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). Under the standards articulated by Justice Sotomayor in Rombom v. United Air Lines, Inc., 867 F. Supp. 214 (S.D.N.Y. 1994), a tort claim is preempted by the ADA

9

if the activity at issue directly involves an airline service, and was reasonably necessary in order for the airline to provide that service.  See Rombom, 867 F. Supp. at 221-222; Weiss v. El Al Israel Airlines, Ltd., 471 F. Supp. 2d 356, 361 (S.D.N.Y. 2006).  Boarding procedures, including an airline's refusal to allow a passenger to board, are an airline service, or directly related to the airline service of boarding passengers.  See, e.g., Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998); Glavey v. Aer Lingus, No. 98 Civ. 7003, 1999 WL 493350, at *4 (S.D.N.Y. July 12, 1999); Nazarian v. Compagnie Nationale Air France, 989 F. Supp. 504, 510 (S.D.N.Y. 1998).

All of the plaintiff's tort claims arise from Delta's decision not to allow the plaintiff or her puppy to board the flight to Ghana.  Thus, the claims all involve Delta's boarding practice which is an airline service.  Moreover, Delta's actions were reasonably necessary to accomplish its boarding procedures.  As a result, all of the plaintiff's tort claims are preempted by the ADA and should be dismissed.  Moreover, each of the plaintiff's tort claims is without merit.

B.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same

10

facts, is also pled." Vitrano v. State Farm Ins. Co., No. 08 Civ. 103, 2008 WL 2696156, at *3 (S.D.N.Y. July 8, 2008) (internal quotation omitted, alteration in original); see also Woodhams v. Allstate Cas. Co., No. 10 Civ. 441, 2010 WL 3858440, at *10 (S.D.N.Y. Sept. 28, 2010). Instead, an alleged breach of the implied covenant of good faith and fair dealing is part of a general breach of contract claim. Therefore, the plaintiff's breach of good faith and fair dealing claim must be dismissed as duplicative of the breach of contract claim which is being dismissed.

C.

The plaintiff has made no showing that Delta acted with negligence or gross negligence. A prima facie case for negligence requires a showing that Delta owed the plaintiff a duty of care, Delta breached that duty of care, and that the plaintiff suffered damages as a result of Delta's breach. See, e.g., Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995); Farash v. Cont'l Airlines, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008) (citations omitted). To establish gross negligence, the plaintiff would be required to establish that Delta's breach was the result of reckless disregard or intentional wrongdoing. See, e.g., AT & T Co. v. City of N.Y., 83 F.3d 549, 556 (2d Cir. 1996) (quoting Colnaghi, U.S.A., Ltd. V. Jewelers Protection Servs., Ltd., 611 N.E.2d 282, 284 (N.Y.

11

1993)); Farash, 574 F. Supp. 2d at 367.  In this case, Delta simply enforced documentation requirements set forth in federal and Ghana regulations, and incorporated by reference in its contract with the plaintiff.  Delta did not breach a duty to the plaintiff by abiding by federal and foreign law, and therefore did not engage in any negligent conduct.  As a result, the plaintiff's claims for negligence and gross negligence must be dismissed.

### D.

The plaintiff claims that DelaCruz negligently misrepresented the documents needed to transport Blondie to Ghana.  Under New York law, a claim for negligent misrepresentation requires, among other things, a showing that the defendant had a duty to give the plaintiff correct information based on a special relationship, and that the defendant "made a false representation that it should have known was incorrect."  JM Vidal Inc. v. Texdis USA, Inc., No. 08 Civ. 6398, 2011 WL 347608, at *24 (S.D.N.Y. Feb. 2, 2011) (quoting Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000)).

The plaintiff cannot satisfy either of these elements.  DelaCruz did not have any specialized knowledge, skills, or expertise and therefore did not otherwise have a "special relationship" with the plaintiff.  See, e.g., Eternity Global

Mater Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004); Gusmao v. GMT Group, Inc., No. 06 Civ. 5113, 2008 WL 2980039, at *5 (S.D.N.Y. Aug. 1, 2008). Instead, the duty DelaCruz owed the plaintiff arose entirely from her contract with Delta. As a result, the plaintiff's cause of action would be limited to breach of contract. See Madison Capital Co. v. Alasia, LLC, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) (citing PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co., No. 99 Civ. 3794, 2003 WL 22118977, at *26 (S.D.N.Y. Sept. 11, 2003)). In addition, the plaintiff has provided no evidence showing that the pet transfer requirements that DelaCruz enforced were incorrect. In any event, DelaCruz reasonably relied on the widely used Timatic database provided by the IATA and thus had no reason to believe the requirements he enforced were incorrect. Thus, the plaintiff's claim for negligent misrepresentation is without merit and is dismissed.

E.

The plaintiff also claims that DelaCruz fraudulently misrepresented the documents needed to transport Blondie to Ghana. In order to establish a claim for fraudulent misrepresentation under New York law, the plaintiff must show, among other things, that DelaCruz intentionally made a known falsehood to the plaintiff. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (quoting Kaufman v. Cohen, 307

13

A.D.2d 113, 119 (1st Dep't 2003)).  As discussed above, the plaintiff has provided no evidence suggesting that the requirements for transferring a pet into Ghana are not those reported by DelaCruz to the plaintiff.  Furthermore, the plaintiff has submitted no evidence suggesting that DelaCruz or Delta could have known that the Timatic database was inaccurate.  Therefore, there is no evidence that there was any knowing or intentional misrepresentation.  The plaintiff's claim for fraudulent misrepresentation is therefore without merit and must be dismissed.

### F.

Finally, the plaintiff asserts that the defendants committed an intentional tort.  However, she makes no showing that the defendants acted with a malicious intent to harm her using illegal and corrupt means.  See, e.g., Barrett v. U.S. Banknote Corp., No. 7420, 1992 WL 232055, at *7 (S.D.N.Y. Sept. 2, 1992) (citing Chen v. United States, 854 F.2d 62, 627-28 (2d Cir. 1988)).  In addition, although the plaintiff pleads special damages, she does not describe the actual losses suffered as a result of the defendants' alleged tortuous act.  Id. at *8.  Because the plaintiff does not provide evidence establishing any of the elements of an intentional tort under New York law, this claim is without merit and is therefore dismissed.

14

V.

The plaintiff filed a motion for sanctions and to compel the defendants to produce documents allegedly requested by the plaintiff including a "time dated receipt of money transaction" and a "time dated receipt of boarding pass." (Pl.'s Mot. to Compel.) The defendants respond that the plaintiff never requested either of the above named documents, and that it is inappropriate for the plaintiff to raise discovery issues before the Court now, over four months after the deadline for factual discovery expired on November 1, 2010, and only after the defendants have moved for summary judgment. (Affirmation of Louis R. Martinez in Opp. To Pl.'s Mot. to Compel (hereinafter "Defs.' Opp.") ¶¶ 8-9, Ex. A.) The defendants also argue that the allegedly requested documents are irrelevant for purposes of responding to the defendants' motion for summary judgment. (Defs.' Opp. ¶ 10.) Finally, the defendants assert that the plaintiff failed to comply with Local Civil Rule 37.2 and Federal Rule of Civil Procedure 37 because she did not seek a Court conference regarding the discovery dispute prior to filing her motion to compel, and she did not include a certification that she made a good faith effort to obtain the requested documents from the defendants without court action. (Defs.' Opp. ¶ 11.)

15

There is no question that the motion to compel and for sanctions is procedurally defective. The motion seeks documents that should have been requested during discovery and not after discovery was closed; there was no effort to confer before making the motion; and there was no request for a pre-motion conference. More importantly, the plaintiff does not explain how the documents sought would undermine in any way the defendants' well founded motion for summary judgment. The plaintiff's motion to compel and for sanctions is therefore denied.

It is clear that the plaintiff believes that she was ill treated by Delta and she seeks exceptional damages to attempt to remedy the hurt that she feels. On the other hand, Delta similarly had rights to enforce the limitations it reasonably had to restrict a passenger from boarding a plane without proper documentation. Delta concedes that the plaintiff is entitled to $650 for the fee that was not properly returned to her. Because the plaintiff has no legally cognizable claims for any further relief, her complaint must otherwise be dismissed.

## CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent they are not dealt with above, they are either moot or without merit. For the reasons stated above,

the defendant's motion for summary judgment is **granted**. The plaintiff's motion to compel or for sanctions is denied. The Clerk is directed to enter judgment in favor of the plaintiff and against Delta, in the amount of $650 plus interest at the rate of 9% from October 24, 2009, and otherwise dismissing the complaint.

**SO ORDERED.**

Dated:    New York, New York
          March 23, 2011

John G. Koeltl
United States District Judge